Good morning, Your Honors. My name is Robert Powell, appearing here on behalf of the petitioner Soka Sun. With me at counsel table is Robert Gibbs. You received Mr. Pickrell's letter? Yes, I did, Your Honor. And he correctly replied that you have no problem? That's correct. Okay. Right ahead. Thank you. This case presents the question of whether a person admitted into the United States as a refugee loses that refugee status and loses the protection that he's entitled to upon becoming a permanent resident, even though there's nothing in the statute and nothing in the regulations that would indicate a loss of that refugee status and refugee protection, and even though the individual who applies for and becomes a permanent resident is not notified in any way that he loses his protection as a refugee. This question, of course, is extremely important to Mr. Sun and his family. This is a boy who came here into the United States when he was two months old. He's lived here in the United States all of his life and has actually never even been As a practical matter, though, if we were to rule that you were right, would it make any difference to anybody else wouldn't they simply have their refugee status revoked automatically and that would be the end of it? I suppose if this Court were to hold that a person retains his or her refugee status upon becoming a permanent resident. Except that it has to be revoked. Pardon? Except that it is revocable. It is revocable. That's correct. I believe that that would make a difference as to how the Immigration Service or the Department of Homeland Security is handling these refugee cases. In particular, I believe what it would mean is that a person, a refugee, such as Mr. Sun, who suffers a conviction, would be eligible for consideration of a waiver, a refugee waiver. Our argument is that before Mr. Sun can be deported from the United States, and I suppose if this Court issued a ruling to that effect, before a refugee is deported from the United States, that person would have to be given an opportunity to apply for a refugee waiver. We submit that that's consistent with the Refugee Convention and, in fact, what the statute and regulations would require. Refugee status can't be revoked? I mean, why wouldn't it simply be revoked at the point of the removal order if it needed to be revoked? The under the statute, there are two mechanisms we submit in which refugee status can be lost or terminated. One is under the statute specifically provides for termination where the person was not a refugee, was not, in fact, a refugee at the time that he or she was admitted into the United States. The second mechanism for removing a refugee from the United States is to bring the person in front of an immigration officer and consider whether or not that person ought to be given a waiver, ought to be allowed to remain in the United States as a refugee. If that waiver, the refugee waiver, is denied, then under those circumstances, that individual, although still a refugee, could, consistent with the Refugee Convention, be deported. And that is only a procedural argument, that the refugee status can't be revoked is where they are. It can be removed, but the refugee status can't be revoked. In this particular case, I think that's right. I mean, there's no grounds for revoking or terminating Mr. Sun's refugee status. And so if the government intends to deport him, the government should, as you say, as a procedural matter, allow him to apply for this refugee waiver, and that should be considered. Are you going to address the exhaustion measure? I'm sorry? Are you going to address the exhaustion question? Yes. The – in terms of the exhaustion question, we submit that it's clear that this Court does have jurisdiction. First of all, the district court found that it had jurisdiction in spite of the exhaustion issue. We submit that that decision was correct for the following reason. The Ninth Circuit has held in Castro-Cortez that exhaustion is not required – this is a habeas case, initially brought as a habeas matter – exhaustion is not required as a statutory matter, but only as a prudential matter. In the el– But Castro-Cortez did not address the relevant statute at all. In their later opinion, that's just a stoic question. Well, the – we would submit that Castro-Cortez does in fact say that the statutory exhaustion requirement in Section 242 does not apply in the habeas context. The Castro-Cortez does say that there is no statutory requirement of exhaustion in the habeas context. I didn't think Castro-Cortez addressed 242. I thought it just said in general there's no requirement but didn't address 242. The – well, that may be correct. I mean, the Castro-Cortez clearly did say, though, for purposes of a habeas petition under Section 2241, there is no statutory exhaustion requirement, and addressed the issues being raised in that – in that case, considering only whether there was a prudential reason. The reason – I – we submit that the reason why there is not – if Castro-Cortez does not resolve that issue, the reason why there is no statutory requirement of exhaustion is that Section 242d, the exhaustion requirement, applies where a person seeks judicial review under Section 242. That's a different type of review and there's a different scope of review than what you get in habeas proceedings. When Congress enacted Section 242, it intended that when a person seeks that review under Section 242, which is – which is an APA-type review, that is to say you get the review under the substantial evidence test, review discretionary decisions, there's possibility for reviewing discretionary decisions, that type of review, Congress said, requires exhaustion by – by statute. That same requirement does not – is not anywhere in Section 2241, and – and there's not the same – well, there's a prudential issue, of course, which we submit is not met in this case. In fact, the question just for a moment on refugee status, if in fact he retains refugee status and asks for relief based on that, that's discretionary, isn't it? That is discretionary. That's correct. That would be the – Is it – is it reviewable? And that we – well, first of all, I suppose the issue here before the Court is whether or not Mr. Son is even eligible for consideration. The Immigration Service has said he's not even eligible for consideration. Let's assume that he retains refugee status and is eligible for consideration and has the opportunity to apply for that discretionary relief, but it's denied. Is that denial reviewable? I suppose that's an open question. I would submit that it is reviewable, and particularly because those provisions that eliminate this Court's jurisdiction to review discretionary determinations accept out refugee decisions. And so we would submit that the discretionary determination made under Section 209 or Section 207, whichever it would be, is not – Congress did not intend to exclude those discretionary decisions from the court review. If you're down to about two and three-quarter minutes, did you want to save any time for rebuttal? I would like to save some time for rebuttal, Your Honor. Thank you for your argument. Thank you. Mr. Pickrell. Good morning. Christopher Pickrell, Seattle U.S. Attorney's Office, appearing on behalf of the appellees. This Petitioner asks the Court to recognize a brand-new and I would say vastly expanded form of relief from deportation, the so-called refugee waiver, which under the Immigration Act and the regs is something that is carried out at the time of admission of a refugee or at the one-year adjustment of status period, but not in removal proceedings. He contends that this refugee waiver should be available to all deportable aliens so long as they had originally entered as refugees, and that is obviously a category that includes many thousands of persons. He contends that you stay in refugee status even after you adjust to lawful permanent residence status, LPR status. Our position is a little different. When the statute uses the term adjustment of status, it means just that. The alien status under U.S. domestic law changes from that of a refugee to that of an LPR, and with that goes perhaps higher burdens imposed by Congress upon those who have achieved the coveted green card status, and especially if you've been convicted of a so-called aggravated felony, Congress has eliminated most forms of relief. Would this conviction make him statutorily ineligible for refugee status? Were he attempting to enter again? Yes, because he would be inadmissible because of the aggravated felony, and I don't  think he would be ineligible for that. Now, if he had applied for withholding of the murder rather than originally, would he have been eligible for that? For withholding? Well, we would contend that to satisfy his burden to obtain withholding relief, he would have to show a probability that he would suffer persecution. But he wouldn't have been disqualified because of his conviction. No. As I understand, the statutory scheme, even aggravated felons, retain the right to seek two, but only two. There was some relief available for him despite his situation just in applying. Correct. I mean, it might have been available. I don't know. Correct. Withholding and convention against torture are the two forms of relief which I understand remain available even to aggravated felons. Now, is it your understanding that withholding is available whether or not you apply for it? Does one have to apply for withholding or does the Attorney General have an obligation to grant it if it's applicable, whether it applies for it or not? I'm sorry, Your Honor. I don't know the answer to that question. The Immigration – the Executive Office for Immigration Review regulations do impose a requirement that the immigration judge notify at least a pro se alien of the likely options and forms of relief that might be available. Of course, it's probably – we would say that's a moot point in Mr. Son's case because he was represented in immigration court by a very experienced immigration lawyer. And following the removal proceeding, he consulted with his lawyer. He opted not to appeal. This is not a matter of him being misled or there being oversight. He opted not to appeal to the Board of Immigration Appeals. So this court lacks the position of the BIA on the matter at hand. It lacks the expertise that the BIA might shed on these arcane issues had Mr. Son Well, the BIA has already held on the refugee issue as a matter of law, that he was – that in fact his refugee status did lapse or was revoked or whatever, right? Was supplanted by LPR. Or whatever. So – so practical matter, there really wouldn't have been much point to exhausting in that question. So the real – the exhaustion question is really whether there was a statutory requirement to exhaust, even though prudentially there wasn't much point in exhaustion. So what's the answer to that question? Your Honor, the case that you refer to, the BIA decision, BATA, which I think is cited by both sides, made the statement, which we do maintain is the holding of the BIA and it was an in-bank decision of the Board. In one footnote, it was – it was by no means the core issue before the BIA on that occasion. So – so far as we know, and we respectfully submit, the group of issues that are – and arguments that have been raised by opposing counsel in Mr. Son's case were not necessarily presented to the BIA. So there is the language, which I grasp, and it does constitute a holding of the Board, that once you adjust status from refugee to LPR, then you do not retain a residual refugee status. But good lawyers would know that you need to appeal to the Board of Immigration Appeals to lay a record, lay foundation, and show that you have standing to maintain the issue that's now being raised out of time in a Federal court habeas petition. So what's your view of past report, Judge? Is it hold that the exhaustion wasn't necessary except prudentially or not? I – I reluctantly agree that my understanding is that's about it. If the action is habeas corpus, then there is merely a prudential exhaustion. And I hesitate to respond to Your Honor's question because I have to confess I'm not satisfied that that's necessarily the Department of Justice's official position on this. As we said in our brief, why shouldn't the statutory exhaustion requirement under Section 242 that is required of non-criminal aliens who find themselves in removal proceedings, why should that not apply to criminal aliens who opt for a late file habeas review instead? It doesn't sound very fair. But couldn't exhaustion have been futile in this case? I would argue no, Your Honor. These issues were not developed before the – there was no appeal to the BIA, and Otherwise, why would counsel have procured the letter from the United Nations that was submitted after – well after judgment was entered and, as we respect, removed – be stricken from the record? We agree with the U.S. Magistrate's conclusion and findings that Mr. Sun received a full and fair hearing in the immigration court. He was represented by counsel. He obviously consulted with counsel and opted to withdraw applications for some of the relief. And the – What's the relevance of that? I mean, it's only relevant to his office, right? Yes. Well, there – I think there's a tag-along due process argument that's being made here, too. And if you're in LPR status, our position is that you do have certainly a right to due process in your immigration hearing, but that right is basically described as a full and fair hearing. And that's what this man got. What about the international law? You know, implications of the arrest of yourself, arresting or provocation? We have this letter from this person at the high commissioner's office. We don't know who he is, although I assume he's a respected and respectable lawyer or officer. Certainly it's a polished letter. We do not know if the letter has been subjected to peer review. We don't know whether the high commissioner himself or herself has ratified this opinion letter. And we don't know whether a draft of the letter was presented to the INS or to the U.S. State Department for their input prior to this being issued. This was procured, clearly, for purposes of this appeal. We submit that the record doesn't explore these issues. If the Court were to hold that international law does require us in this country to continue to hold someone in a, I guess it would be a dual refugee-slash-LPR status, this would be a huge change of policies and procedures, and apparently it would render many final removal and deportation orders subject to reopening because of this major change in the law. We respectfully request that the judgment of the district court be affirmed. Thank you for your argument. Yes, Your Honor, if I can make just a couple quick comments. First of all, as to this issue of whether there's a statutory requirement to exhaust let me try to explain again why there should not be such a requirement. In this case, again, we have a legal challenge in habeas proceedings on an issue that's already been resolved by the Board of Immigration Appeals. It really doesn't, for a person like Mr. Sonn or others in his situation, why should he be required to exhaust when there's no statutory requirement under Section 2241 and the issue has already been resolved by the Board? The issue is whether there's a statutory requirement under 1252, isn't that the question? Yes. And why that should not really apply in a case like this, because in effect what that would mean is that Mr. Sonn would basically have to waste his time by filing an appeal. But when it does apply, it applies, right? In other words, the way it is, that statutory provision has been interpreted strictly, and as it applies to direct review, it applies whether futile or not futile. Is that right? I believe that's correct, yes. So those kinds of arguments don't help very much. The real question is whether it applies on habeas or doesn't apply on habeas. That's correct. And I suppose the statute is not clear about that. And so in trying to figure out why should or shouldn't this requirement apply as a matter of statutory interpretation, well, you know, presumably Congress intends for these proceedings to run expeditiously, and there's not really a reason or a justification for taking this type of a case up to the Board when, again, when the issue has already been resolved. It's the – I would suggest it's perfectly appropriate for a person in that situation, rather than filing a futile appeal to the Board, is to go in, not for direct review, of course, but under habeas, where you have limited, you know, basically you have a limited argument that you can make. If I can respond to a question about whether or not a person like Mr. Sonn with a conviction of this nature would be admissible into the United States as a refugee. In fact, it's clear that a person in his situation – let's suppose we have a refugee who has a conviction before coming into the United States, a similar conviction. That person would be eligible to enter the United States as a refugee. He would be eligible under Section 207 to apply for a waiver. And he would not be barred. He would not be ineligible. In fact, we submit the government's position is – is anomalous, because also if Mr. Sonn had come into the United States as a refugee and then suffered this conviction before he became a permanent resident, again, he would be eligible to apply for this waiver and, if it's approved, live in the United States. Basically, the government's position is that by becoming a permanent resident, you're worse off than you were as a refugee. What about the question I asked? If he would be eligible for withholding of deportation? Well, withholding of deportation, it's not clear. There's a – an individualized determination as to – I think it's one that ties determination and a waiver, a refugee waiver. So either event, you're looking at an individualized determination for somebody who would otherwise be eligible, right? Right. But with respect to withholding, there's a higher standard than a refugee. A person may well be a refugee, but not entitled to withholding of deportation. And that's an important distinction we would submit. There are other areas in the immigration law where LPRs are treated more harshly than initial entrants, and that's been upheld by the courts, including this Court. Under Section 212H, a waiver that's not available for permanent residence. That is correct. There is one in which Congress – I guess we would submit, you know, Congress has been very clear and explicit. In this case, of course, there is no clear and explicit language from Congress to that effect. Thank you for your argument. You're out of time. Thank both sides for their argument. They're quite helpful. The case just argued will be submitted.
judges: Thompson, Hawkins, Berzon